IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| TRENNA L. ANDERSON, | ) | Civil No. 08-119 -JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

      Tim Wilborn
      Attorney at Law
      P.O. Box 2768
      Oregon City, OR 97045

           Attorney for Plaintiff

      Karin J. Immergut
      U.S. Attorney
      Britannia I. Hobbs
      Asst. U.S. Attorney
      1000 S.W. 3rd Avenue, Suite 600
      Portland, OR 97204-2902

FINDINGS AND RECOMMENDATION - 1

Thomas M. Elsberry
Special Asst. U.S. Attorney
Office of General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

       Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Trenna Anderson brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision of the Commissioner of Social Security (the Commissioner) denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income benefits (SSI).  For the reasons set out below, the Commissioner's decision should be remanded for further proceedings.

## Procedural Background

Plaintiff filed applications for DIB and SSI on November 16, 2004, alleging that she had been disabled since April 30, 2000, because of lumbar, cervical and thoracic degenerative disc disease; spinal arthritis; post-herpetic neuralgia; anxiety; and depression. After these applications were denied initially and upon reconsideration, plaintiff timely requested a hearing before an administrative law judge (ALJ).

A hearing was held before ALJ Timothy Terrill on March 20, 2007.  In a decision issued on April 10, 2007, the ALJ found that plaintiff did not have any impairments that were "severe" within the meaning of the Social Security Act (the Act), and accordingly was not disabled.  That decision became the final decision of the Commissioner on December 6,

FINDINGS AND RECOMMENDATION - 2

2007, when the Appeals Council denied plaintiff's timely request for review.  In the present action, plaintiff seeks judicial review of that decision.

## Factual Background

Plaintiff was born in September, 1953, and was 53 years old when the ALJ issued his decision denying her applications for benefits.  Plaintiff has worked in a variety of clerical and administrative jobs, and has had supervisory responsibilities.  She last worked as a secretary in 1995.  She stopped working when she had a child and wanted to be the primary caregiver, and has testified that increasing physical pain prevented her from returning to work as she had planned.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If

FINDINGS AND RECOMMENDATION - 3

the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.  20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the  claimant is able to perform work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

FINDINGS AND RECOMMENDATION - 4

At Steps One through Four, the burden of proof is on the claimant. <u>Tackett</u>, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. <u>Id.</u>

### Medical Record

On April 7, 1998, plaintiff was treated at the Astoria Chiropractic Clinic for back pain and pain in her right shoulder.

At the Lower Columbia Clinic, Dr. Thomas Duncan treated plaintiff for pain in her back, shoulders, and the right side of her head between May and October, 1999.

Dr. Duncan treated plaintiff for a painful lump on the left side of her neck and for tendinitis in one of the fingers of her right hand on August 11, 2000.

Based upon a referral from Dr. Duncan, Edie Glantz, M.D., a neurologist, evaluated plaintiff for right-sided head pain and hypertension on April 9, 2001. Plaintiff told Dr. Glantz that, during the previous month, she had experienced two episodes during which she felt as if she would pass out, and that she had decreased hearing in her right ear. Plaintiff added that the symptoms resolved completely within about two hours. Dr. Glantz noted that she had seen plaintiff for head pain in April of 1999, and that an exam and head CT scan at that time were normal. Based upon the April, 2001 evaluation, Dr. Glantz opined that plaintiff's headaches were not caused by seizure, and ordered an EKG and an MRI to rule out a brain mass or brain lesions. The results of the MRI were normal. In a letter to Disability Determination Services of Oregon dated December 2, 2004, Dr. Glantz indicated that she had last evaluated plaintiff on May 2, 2001, and that, at that time plaintiff had "a normal

FINDINGS AND RECOMMENDATION - 5

neurologic exam and normal ability to sit, stand, walk, lift, carry, handle objects, hear, speak, travel and perform mental activities, except as limited by her alcohol use."

On April 24, 2001, plaintiff told Dr. Duncan that she experienced episodes lasting two hours during which she felt dizzy, felt as though she might pass out, and felt like she was "in a tunnel or in a fog." Plaintiff also reported that she continued to experience pain in the right side of her head, and that the episodes were followed by a dull headache and total exhaustion. She told Dr. Duncan that she smoked a pack of cigarettes per day, and drank 4 or 5 beers per day.

Dr. Duncan's chart notes of May 4, 2001, indicate that plaintiff complained of episodes of dizziness, right-sided hearing loss, and head pain, which Dr. Duncan opined was related to plaintiff's migraines.

In a chart note dated May 16, 2001, Dr. Duncan reported that plaintiff had telephoned to report that she had experienced another episode of dizziness and disorientation with shaking and tingling that had lasted for 20-45 minutes. Dr. Duncan opined that plaintiff might be having panic attacks, and prescribed Zoloft. In August, 2001, plaintiff reported that she had not had more panic attacks, but that the Zoloft made her very tired.

A chart note dated December 6, 2001, indicated that plaintiff appeared to be anxious, was talking volubly, and changed subjects rapidly. Dr. Duncan opined that plaintiff was experiencing depression, anxiety, and diarrhea. He also noted that plaintiff had an unexplained bruise on her left forearm. Dr. Duncan altered plaintiff's dose of Zoloft, added a prescription for Paxil, recommended counseling, and advised plaintiff to try journaling. In notes of a visit a few days later, Dr. Duncan indicated that plaintiff was relaxed, appropriate, and demonstrated a much more normal affect than she had during the December 6 visit.

FINDINGS AND RECOMMENDATION - 6

Dr. Duncan opined that plaintiff's anxiety was improving, and noted that plaintiff had indicated that she had not received any counseling because she could not afford it.

On November 12, 2004, plaintiff was treated for back pain at North Coast Chiropractic. Plaintiff complained of pain in her right arm, which was aggravated by bending, lifting, and sitting. A chart note of that visit indicates that plaintiff had limited lumbar range of motion and a positive straight leg raise test bilaterally. Lumbar degenerative disc disease, sprain/strain of the lumbar spine, and sciatic neuralgia were diagnosed.

At the request of the Commissioner, on December 30, 2004, plaintiff was examined by Dr. Steven Vander Waal. Dr. Vander Waal stated that plaintiff alleged disabling chronic back pain and pain in her right shoulder. Plaintiff told Dr. Vander Waal that she had first experienced back problems when she was 16 years old, and that the pain had gradually worsened, and was then constant. Plaintiff also told him that she could sit for up to two hours before she had to get up and move around, could stand for 20 minutes, could walk two blocks, and could lift up to 20 pounds on occasion. She reported that she smoked a pack of cigarettes per day, and drank four or five beers daily.

On examination, Dr. Vander Waal found no joint deformities or evidence of active synovitis, and plaintiff's neck was not tender to palpation. A shoulder examination was unremarkable, with no tenderness to palpation and full range of motion present. Plaintiff's elbows, wrists, and hands were unremarkable, grip strength was normal, and plaintiff had normal coordination and manual dexterity. Plaintiff's back examination showed no significant tenderness to palpation, and examination of plaintiff's hips, knees, ankles, and feet was within normal limits. Plaintiff's gait was normal, and plaintiff was able to perform tandem gait without difficulty. Plaintiff could stand on her tip toes and move back to her

FINDINGS AND RECOMMENDATION - 7

heels, could balance on either foot, and could get into a squatting position and back up again.
Cranial nerves II-XII were found to be intact, deep tendon reflexes were equal and
symmetrical, and there were no motor or sensory deficits.  X-rays taken of plaintiff's lumbar
spine showed some minor degenerative changes at L5-S1, and X-rays of the right shoulder
appeared to be normal.

Dr. Vander Waal diagnosed chronic back pain, probably due to degenerative disc
disease, and right shoulder pain with no demonstrated pathology.  He concluded that there
were "no objective findings on examination that would support a finding of disability."

On March 21, 2005, Dr. Duncan treated plaintiff for head, neck, and back pain, and
for lesions on her scalp and neck caused by a herpes zoster infection.  Dr. Duncan noted that
plaintiff was taking Tylenol for head pain.  He prescribed amitripyline, and ordered X-rays of
plaintiff's lumbar and thoracic spine.

X-rays taken of plaintiff's spine on March 21, 2005, showed mild anterior osteophytes
in the thoracic spine, mild anterior endplate osteophytes in the lumbar spine, joint space
narrowing at L4-5 and L5-S1, degenerative disc disease, mild facet arthrosis at L4-5 and L5-
S1, and mild sclerosis of the right sacroiliac joint.  Dr. George Young diagnosed mild
multilevel degenerative joint and disc disease, and facet arthritis, and indicated that
sacroiilitis on the right should be considered.

In a letter to plaintiff's attorney dated July 11, 2005, Dr. Duncan stated that

> Ms. Anderson has been a patient in our clinic for many years.  She has been
> treated for migraines and degenerative disease of the spine, both of which
> cause debilitating pain at times.

At the request of plaintiff's attorney, Dr. Duncan completed a questionnaire, dated March 19, 2007.  Dr. Duncan stated that plaintiff had been diagnosed with degenerative disc and joint disease of the cervical and lumbar spine, and "post herpetic neuraligia (shingles)." He added that the degenerative disc and joint disease was progressive, and the post herpetic pain was "stable, but permanent."  In response to a request to identify the clinical findings, laboratory and test results that showed plaintiff's impairments, Dr. Duncan stated that:

> The post herpetic pain is an older diagnosis, and this is objectively confirmed by skin changes observed in March of this year.  This finding is a marker. The pain can be disabling, but is subjective.

> There are no hard neurological findings on the degenerative joint and disc disease of the lumbar and cervical spine.  However, a March 21, 2005 x ray of the lumbar spine shows osteophytes and joint space narrowing at L4-5 and L5-S1.  There is also facet arthrosis of L4-5 and L5-S1.

Dr. Duncan identified a radiology report and a "finding of antalgic gait" as "objective signs" of plaintiff's pain.

> In response to a query as to whether plaintiff is a malingerer, Dr. Duncan stated that:

>> I do not believe that Ms. Anderson is a malingerer in the sense that she is intentionally exaggerating her symptoms in order to obtain benefits. However, I believe that there is an emotional component to her pain. Stated another way, I feel she experiences pain as a reaction to emotional stress.

Dr. Duncan stated that plaintiff's symptoms included neck and low back pain, a history of headaches that he would not classify as "migraine" type, and "neuralgic pain from the herpetic pain" in the scalp, which "can be debilitating."

Asked whether plaintiff's physical and emotional impairments were "reasonably consistent with the symptoms and functional limitations" described in the evaluation, Dr. Duncan responded:

FINDINGS AND RECOMMENDATION - 9

Yes, because there are physical signs, but also emotional stress, and the symptoms that she presents are consistent with her presentation. There are significant emotional factors in the physical manifestation for pain.

Asked how often, during a typical workday, plaintiff would experience pain or other symptoms severe enough to interfere with the attention and concentration needed to perform simple work tasks, Dr. Duncan stated:

In my opinion she would be easily distracted in a work setting, although my charts do show that she is raising her children. I think she has a limited fund of "emotional energy," and she focuses it on her children. She probably would not be able to also work competitively in addition to that.

He added that plaintiff had had these impairments since he began treating her in 1999.

Asked to estimate the functional limitations that plaintiff would experience in a competitive work situation, Dr. Duncan stated that he had spoken with plaintiff "about her functional limitations in regard to walking, sitting, standing, etc." He added that he could not provide "an accurate opinion on specific physical limitations in a work setting," and that, to establish these, he would refer plaintiff "to a psychiatrist or a physical capacities evaluation."

**Testimony**

1. Plaintiff

At the hearing before the ALJ, plaintiff testified that, when she stopped working and had a child in 1995, she had planned to return to work, but that increasing pain ultimately prevented her from doing so. She described the herpetic neuralgia, or shingles, from which she suffers as "oozing sores" that "spread a lot" and affect her neck, chest, head, and ear. Plaintiff testified that the lesions on her head and neck make it very painful to wash and comb her hair, and "are just extremely painful." She added that she has these lesions "almost

FINDINGS AND RECOMMENDATION - 10

continually," and that as soon as they start to heal, new sores appear.  Plaintiff testified that the lesions cause a continual dull pain, which becomes a very sharp pain if they are touched, and that the pain affects her ability to concentrate.  She added that she tried to keep her stress level as low as possible, and that she had to lie down for two or three hours at a time once or twice a week because of the pain from shingles.  She also testified that she experiences pain in her entire spine, but that her lower back is the most painful area.  Plaintiff stated that she took over-the-counter pain medication, but that she sought to avoid pain medication, and did not want to take prescription medications.  She added that she spent a lot of time on a heating pad, and that she needed to lie down for up to several hours two or three times a week because of back pain.

Plaintiff testified that pain and numbness in the middle finger of her right hand, which was deformed by a dog bite when she was child, made it difficult for her to type.

Plaintiff testified that she took medication for panic attacks for "a couple of years," but had "pretty much learned to control it without medication."  She also reported that, because of her back pain and shingles, she did not sleep well, and was often tired and lacked energy during the day.  Plaintiff stated that, because of her condition, she was usually "afraid to drive anymore because of steering and so forth."

Plaintiff testified that she was able to wash a few dishes each day, but that "things like vacuuming . . . those types of things" did not "get done very often."  She stated that she shops for groceries, but that by the time she had gone through several aisles, her pain worsened and she needed to lean on the cart.  Plaintiff estimated that she could sit for up to an hour at a time, and would then need to move around for 10 to 15 minutes before sitting again.  She reported that she could carry a gallon of milk, but that a doctor had told her that

she should not lift more than five pounds.  She added that her parents had been picking up and doing her laundry, and that, on her worst days, she had trouble with even basic personal care.

Plaintiff testified that she had good and bad days, and that she might have a few days a month when she felt that she could "do something other than what's required or a necessity."  She stated that, on perhaps another 10 to 15 days per month, she is unable to be active and could not be present at a workplace.

2. Vocational Expert Testimony

At the hearing, the ALJ asked VE Paul Morrison to consider an individual of plaintiff's age, education, and experience, who could lift or carry a maximum of 10 pounds, and could sit for no more than one hour at any one time.  The VE testified that such a person could not perform plaintiff's past relevant work, because secretaries must sit for much more than an hour at a time.

In response to questioning by plaintiff's attorney, the VE testified that a significant limitation in the ability to use the right hand and more than three absences per month would also interfere with the ability to perform plaintiff's past secretarial work.

3. Testimony of Betty Sumrall, Plaintiff's Mother

Betty Sumrall, plaintiff's mother, submitted a written statement describing her observations concerning plaintiff's limitations.  Ms. Sumrall noted that plaintiff cared for her two small children, and that plaintiff needed to rest part of the day after she got the children off to school.  Ms. Sumrall stated that plaintiff used to exercise and walk a lot, but was no

longer able to do so.  She noted that plaintiff needed help with household chores because of her back pain, and that, though she had enjoyed cooking in the past, she now used mostly frozen food because it was easier to prepare.   Ms. Sumrall stated that she helped plaintiff with her food shopping, that plaintiff's back pain had increased recently, and that plaintiff had difficulty lifting, squatting, reaching, kneeling, and climbing stairs.  She also stated that plaintiff had had problems with her back since she fell while skiing at age 17, and that her condition was worsening as her spine degenerated.

## STANDARD OF REVIEW

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record.  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d

FINDINGS AND RECOMMENDATION - 13

771, 772 (9ᵗʰ Cir. 1986).  The Commissioner's decision must be upheld, however, even if

"the evidence is susceptible to more than one rational interpretation."  <u>Andrews</u>, 53 F.3d at

1039-40.


### ALJ'S Decision

At the first step of his disability analysis, the ALJ found that plaintiff met the insured

status requirements for disability insurance benefits through December 31, 2000, and that

plaintiff had not engaged in substantial gainful activity since that time.

At the second step, the ALJ found that plaintiff's degenerative disc disease of the

cervical, thoracic, and lumbar spine and post-herpetic neuralgia (shingles) were "medically

determinable impairments."  However, the ALJ found that, alone or in combination, these

impairments were not "severe" within the meaning of relevant regulations.  Accordingly, the

ALJ did not proceed to step three of the disability analysis, and found that plaintiff was not

disabled within the meaning of the Act.

In concluding that plaintiff's impairments were not severe, the ALJ gave "great

weight" to the results of a consultative physical examination performed by Dr. Steven

Vander Waal, and gave no weight to the questionnaire completed by Dr. Duncan, plaintiff's

treating physician.  He found that, though plaintiff had "a medically determinable

impairment" that could "reasonably be expected to produce the alleged symptoms," plaintiff's

statements concerning the "intensity, persistence and limiting effects of these symptoms"

were not entirely credible.  The ALJ also found that the statements provided by plaintiff's

mother should be "considered with caution" because she "has a personal relationship with the

FINDINGS AND RECOMMENDATION - 14

claimant and lacks the expertise and possibly the motivation to offer an objective or

functional assessment . . . ."

## Discussion

Plaintiff contends that this action should be remanded for an award of benefits or for

further proceedings because the ALJ improperly rejected the opinion of Dr. Duncan,

improperly rejected plaintiff's testimony, improperly rejected the statements of plaintiff's

mother, and erred in finding that plaintiff does not have a "severe" impairment.  Though I

conclude that outstanding issues preclude remand for an award of benefits, I do agree that the

action should be remanded for further proceedings.  I will begin the discussion below with

the last of plaintiff's criticisms of the ALJ's decision.

1. Severity of Plaintiff's Impairments

Plaintiff contends that the ALJ erred in concluding, at the second step of his disability

analysis, that plaintiff did not have any impairment that qualified as "severe" within the

meaning of relevant regulations.  I agree.  An impairment need not be particularly onerous to

qualify as "severe."  Instead, the severity determination at step two of the disability

determination process is "a de minimis screening device to dispose of groundless claims."

Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing Bowen v. Yuckert, 482 U.S.

137, 153-54 (1987)).  "An impairment or combination of impairments can be found 'not

severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

effect on an individual's ability to work.' "  Id. (citing SSR 85-28; Yuckert v. Bowen, 841

F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28)).

FINDINGS AND RECOMMENDATION - 15

The record does not support the ALJ's conclusion that plaintiff's degenerative disc disease of the cervical, thoracic, and lumbar spine and post-herpetic neuralgia (shingles) are not "medically determinable impairments" within the meaning of SSR-85-28. Though questions remain as to whether plaintiff is able to perform any jobs that exist in substantial numbers in the national economy, substantial evidence supports the conclusion that plaintiff's back problems and shingles would have more than a minimal effect on plaintiff's ability to work. As discussed more fully below, plaintiff has presented the well-supported opinion of a treating physician who has concluded that her impairments pose significant impediments to her ability to work. In addition, I can only assume that the ALJ intended his hypothetical posed to the VE, describing an individual who could not sit for more than one hour, to accurately describe plaintiff's limitations. Given that the ALJ testified that a person with those limitations could not perform plaintiff's past relevant work as a secretary, there is no basis for concluding that plaintiff's impairments would have no more than a "minimal affect" on plaintiff's ability to work.

Because the ALJ erred at step two of his disability analysis by finding that plaintiff's impairments were not "severe," the Commissioner's decision must be remanded. Based upon a careful examination of the record, I conclude that the action should not be remanded for an award of benefits because issues remain concerning plaintiff's ability to perform substantial gainful activity. Instead, the action should be remanded with instructions that plaintiff's impairments be characterized as "severe" at step two, and that an ALJ recommence the analysis at step three.

2. <u>ALJ's Rejection of Dr. Duncan's Opinion</u>

Because treating physicians have a greater opportunity to know and observe their patients, their opinions are given greater weight than the opinions of other physicians. Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989). Accordingly, when a treating physician's opinion is contradicted by the opinion of another physician, an ALJ rejecting the treating physician's opinion must provide specific and legitimate reasons, which are supported by substantial evidence in the record, for doing so.

Plaintiff contends that the ALJ failed to provide the requisite support for his rejection of Dr. Duncan's opinion concerning plaintiff's residual functional capacity. Again, I agree.

As noted above, the ALJ accorded no weight to the residual functional capacity questionnaire dated March 19, 2007, in which Dr. Duncan opined that plaintiff had "a limited fund of emotional energy" and "probably would not be able to also work competitively in addition to" caring for her children. The ALJ rejected this opinion as "vague and not supported by objective evidence in the record." He also characterized the opinion as in conflict with "Dr. Duncan's inability to identify specific functional limitations, which preclude the claimant from engaging in basic work activity," and characterized Dr. Duncan's "contention" that plaintiff probably could not work as "inconsistent with his treatment notes." He added that Dr. Duncan's earlier description of plaintiff's pain as being debilitating "*at times* . . . hardly reflects a patient under complete disability."

These are not the sort of "specific and legitimate reasons" required to reject the opinion of a physician who had treated plaintiff for a number of years, in favor of the opinion of Dr. Vander Waal, an examining physician. Dr. Duncan's description of the interaction of plaintiff's emotional and physical problems, and their likely effect on plaintiff's ability to work competitively, was not vague, and was supported both by Dr. Duncan's responses to the

questionnaire and by the record of his treatment of plaintiff, which detailed significant emotional and physical problems. Though Dr. Duncan did not state specific restrictions on plaintiff's ability to stand, sit, walk, and lift, his conclusion that the pain she experienced from shingles could be debilitating, and that the symptoms she experienced from her impairments would probably distract her to the point that she could not work, were well supported. Dr. Duncan's observation in July, 2005, that plaintiff's back pain could be debilitating at times is wholly consistent with Dr. Duncan's treating records and with his opinion that plaintiff probably could not maintain the concentration needed for competitive employment. Dr. Duncan's observation that pain from shingles could also be debilitating was supported by the record, and any pain that is debilitating "at times" can render a claimant disabled if it is experienced frequently.

When an ALJ provides inadequate reasons for rejecting the opinion of a treating or examining physician, that opinion is credited as a matter of law. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). A reviewing court then has discretion to remand the action for further proceedings or for a finding of disability and an award of benefits. See, e.g, Stone v. Heckler, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000). A reviewing court should credit the evidence and remand for a finding of disability and an award of benefits if: 1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; 2) there are no outstanding issues to be resolved before a determination of disability can be made; and 3) it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence in question were credited. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

FINDINGS AND RECOMMENDATION - 18

Here, the ALJ did not provide adequate reasons for rejecting the opinion of Dr. Duncan, and his opinion should be credited.  However, the action should not be remanded for an award of benefits because additional issues need to be resolved, and it is not clear from the record that an ALJ who credited Dr. Duncan's opinion would be <u>required</u> to find that plaintiff is disabled.  Though Dr. Duncan opined that plaintiff probably could not maintain the concentration required to work, he did not unequivocally conclude that she could not work.  In addition, though he noted that the pain caused by plaintiff's shingles could be disabling, he added that it was subjective, suggesting that further psychological evaluation might be necessary.  This is consistent with Dr. Duncan's observation that, to establish plaintiff's specific limitations as to a work setting, he would need to  refer plaintiff "to a psychiatrist or a physical capacities evaluation."  Dr. Duncan's reference to a psychiatrist implied that this treating physician concluded that accurate assessment of the limitations imposed by the combination of plaintiff's emotional and physical difficulties was subject to further assessment.  This suggests that, even if Dr. Duncan's opinion is accepted, outstanding issues need to be resolved concerning plaintiff's residual functional capacity before an accurate disability determination can be made.  Even if an ALJ generally accepted Dr. Duncan's opinion, he would not be required to find that plaintiff is disabled, because a physician's opinion as to the ultimate determination of disability is not binding on an ALJ. <u>Batson v. Commissioner of Social Security</u>, 359 F.3d 1190, 1195 (9th Cir. 2004).

The need for further proceedings is especially clear here, where the ALJ erred in failing to find that plaintiff's impairments are "severe" within the meaning of relevant regulations.  On remand, the ALJ should characterize plaintiff's impairments as "severe," and should generally accept Dr. Duncan's opinion as to her condition.  The ALJ is not required to

accept Dr. Duncan's ultimate conclusion that plaintiff is probably unable to work competitively, and should consider referring plaintiff for evaluation of psychological issues that might affect her ability to work.


3. Credibility Determinations

As noted above, in concluding that plaintiff's impairments are not "severe," the ALJ found that plaintiff's description of her symptoms was not wholly credible, and that her mother's statements concerning plaintiff's condition should be "considered with caution."

Plaintiff contends that the ALJ did not provide the required support for these credibility determinations. She argues that, when her testimony and the statements of her mother are properly credited, disability is established, and the action should be remanded for an award of benefits.


a. Plaintiff's Credibility

For the reasons discussed above, I conclude that this action should be remanded for further proceedings in which the ALJ must characterize plaintiff's impairments as severe, generally credit Dr. Duncan's opinion, except as to the ultimate conclusion as to disability, and consider referring plaintiff for evaluation of psychological issues that might affect her ability to work. Additional proceedings will likely result in a different assessment of plaintiff's residual functional capacity, and will require a hearing during which plaintiff will again testify, and a VE will testify based upon the ALJ's revised residual functional capacity determination. Under these circumstances, where the ALJ will likely be required to assess plaintiff's credibility again in light of new testimony and an expanded record, this court's

examination of the ALJ's credibility determination concerning plaintiff in the pending

decision would be premature and advisory.  Certainly, under appropriate circumstances, a

court concluding that an ALJ erred in his credibility determination has the discretion to

remand an action for an award of benefits.  See, e.g., Stone v. Heckler, 761 F.2d 530, 533

(9th Cir. 1985).  However, where, as here, additional issues need to be resolved before a

determination of disability can be made, remand for further proceedings is required.  E.g.,

Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).


b. Credibility of Plaintiff's Mother

        Because it is less likely that, on remand, additional evidence concerning plaintiff's

condition will be elicited from plaintiff's mother, I will note here my conclusion that the ALJ

did not provide adequate reasons for finding that the statements of plaintiff's mother should

be "considered with caution."

        An ALJ must provide reasons that are germane for discounting the testimony of a lay

witness.  E.g.,  Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).  Here, the ALJ discounted

the statements of plaintiff's mother because she "has a personal relationship with the claimant

and lacks the expertise and possibly the motivation to offer an objective or functional

assessment . . . ."

        This criticism fails for several reasons.  If a "personal relationship" was a proper basis

for discounting the observations of family and friends, these individuals could never provide

useful  evidence of a claimant's impairments and limitations.  This is not the case: The Ninth

Circuit has observed that friends and relatives are often in a position to observe a claimant's

symptoms and activities, and can provide competent evidence to substantiate medical

opinions or to show how an impairment affects a claimant's ability to work.  Sprague v.

Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987).  Likewise, defendant has cited, and I have

found, no support for the assertion that a lay person's lack of "expertise" is a sufficient basis

for discounting testimony.  The questionnaire that plaintiff's mother completed did not

appear to require medical expertise, and to require that expertise is inconsistent with the very

concept of "lay" testimony.  If the testimony of relatives and friends could be discounted

simply because the individual offering the evidence lacks medical expertise, lay testimony

would seldom be useful.

Because acceptable reasons for discounting the lay testimony were not provided, on

the remand that is required here for other reasons, the ALJ must either provide adequate

reasons for rejecting the statements provided by plaintiff's mother, or credit her observations.


## Conclusion

For the reasons set out above, a judgment should be entered remanding this action

for further proceedings.  The judgment should state that, on remand, an ALJ must consider

plaintiff's impairments as severe at the second step of disability analysis; must generally

credit the opinion of Dr. Duncan, except as to the ultimate question of disability; should

consider referring plaintiff for evaluation of the psychological issues identified in

Dr. Duncan's opinion; and must either accept the statements of plaintiff's mother concerning

plaintiff's symptoms and impairments, or provide a legally sufficient reason for discounting

her credibility.


FINDINGS AND RECOMMENDATION - 22

## **Scheduling Order**

The above Findings and Recommendation are referred to a United States District Judge for review.  Objections, if any, are due April 3, 2009.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within 10 days after service of a copy of the objection.  If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or the latest date for filing a response.

DATED this 18th day of March, 2009.


 /s/  John Jelderks_____
John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION - 23